UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal Action No. 5: 19-035-DCR |
| V. | ) | |
| JAMEEL SLEET, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Jameel Sleet has moved to suppress all evidence discovered on his person following a traffic stop on November 14, 2018. [Record No. 24] The motion was referred to United States Magistrate Judge Matthew Stinnett for the issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Stinnett held an evidentiary hearing and issued an opinion, recommending that Sleet's motion to suppress be denied. [Record No. 34] No objections were filed.

After reviewing the record and the Report and Recommendation, the Court will deny the defendant's motion.

## I.

Gang Unit Detective Jody Kizis began an investigation regarding Tavis Chenault in mid-2018. On November 14, 2018, Kizis briefed Detective Luke Valdez and Officer Brandon Hazlewood regarding his findings. He explained that Chenault: (i) was a gang member of the Kill or Be Killed gang; (ii) bragged on social media about carrying firearms; (iii) was suspected

of drug trafficking; (iv) may be associating with armed and dangerous individuals; and (v) was carrying a weapon during his last interaction with law enforcement.

Defendant Sleet was traveling in a car with Chenault on November 14, 2018, while Kizis and other members of the Lexington Police Department conducted surveillance. Police observed Chenault and three others traveling in a silver Buick heading toward North Broadway Street in Lexington. Hazlewood noticed that the license plate on Chenault's car was not illuminated and stopped the vehicle. Valdez arrived on scene and approached the driver side while Hazelwood approached the passenger side of the car. Hazlewood and Valdez detected the odor of marijuana and directed the four individuals to exit the vehicle. The occupants included Sleet, Chenault, Angela Renfro (Chenault's mother), and Devin Lovette. Sleet and the other individuals exited the vehicle as ordered.

Valdez recognized Sleet from a prior interaction at a residence on Hinton Road where multiple guns were recovered. Valdez conducted a pat down and felt something in Sleet's pocket. Valdez testified at the suppression hearing that he immediately recognized the item as a plastic bag, likely containing narcotics. He instructed Sleet to remove the bag from his pocket, confirmed that it contained narcotics, and placed Sleet under arrest. Later, the defendant also removed cocaine base, cocaine hydrochloride, and fentanyl from his underwear.

## II.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. Sleet contends that his Fourth Amendment rights were violated because: (i) there was no valid reason for the traffic stop; (ii) officers lacked reasonable suspicion that he was armed and dangerous to justify the pat down; (iii) the officer conducting the search of

his person exceeded the scope of a Terry pat down; and (iv) he did not voluntarily remove the narcotics from his person.

  i.  <u>There was a lawful reason for the stop.</u>

A traffic stop constitutes a seizure of the driver and all of his passengers within the meaning of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 259-69 (2007). An officer may stop a car when there is probable cause to believe that a traffic violation has occurred. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). And if a traffic stop is supported by probable cause, the subjective intent of the officer's is irrelevant. *Whren v. United States,* 517 U.S. 806, 813 (1996). "Police officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). However, an officer may not "further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Blair,* 524 F.3d at 752 (quoting *United States v. Perez,* 440 F.3d 363, 370 (6th Cir. 2006)).

Here, the officers stopped the vehicle driven by Chenault because the license plate was not illuminated. As Magistrate Judge Stinnett noted, it is hard to see the license plate in the body cam footage, but the footage appears to show that the license plate was not illuminated. [Body Cam Footage USA-217 at 1:47; 9:10] Hazlewood also testified that the license plate was not illuminated.[1]

---

[1] Testimony was presented that Chenault, the driver of the car, did not have a valid driver's license.

Additionally, there was a continued justification for the stop because the officers smelled marijuana. Both Valdez and Hazlewood testified that they approached the vehicle and immediately smelled marijuana. [Audio Recording of Suppression Hearing ("Rec.") at 47:50; 1:16:29][2] As Magistrate Judge Stinnett correctly noted, "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Elkins,* 300 F.3d 638, 659 (6th Cir. 2002).

The officers were justified in initially stopping the car for a legitimate civil violation. Also, the officers had probable cause to continue the stop after they smelled marijuana.

    ii.    <u>Valdez had reasonable articulable suspicion that Sleet was armed and dangerous to justify a pat down.</u>

A law enforcement officer may perform a frisk or pat down during a Terry stop when the officer has reasonable suspicion that the person to be searched is armed and dangerous. *United States v. Pacheco*, 851 F.2d 384, 390 (6th Cir. 2016). To establish reasonable suspicion, an officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The Court considers the totality of the circumstances in determining if there is reasonable articulable suspicion. *Illinois v. Wardlow,* 528 U.S. 119, 126-28 (2000). The "test is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger." *Pacheco*, 851 F.2d at 390. The Court should not consider the different factors in isolation. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). Further, Courts are cautioned to be mindful of the executing

---

[2] Available at Tape #KYED-LEX_5-19-cr-35-DCR-MAS-1-20190319_091058.

officers' particular, subjective training and experiences in determining whether an officer had reasonable articulable suspicion. *United States v. Szymkowiak*, 727 F.2d 95, 98 (6th Cir. 1984).

Valdez explained that he previously encountered Sleet during the execution of a search warrant at a residence on Hinton Road where multiple gang members were present and where officers recovered firearms and drugs. [Rec. at 1:00:00-1:07:00] Valdez thought that the gathering at Hinton Road may have been a gang meeting and that the individuals at the residence may be involved in drug trafficking. [Rec. at 1:00:00-1:10:00; *see also United States v. Branch*, 537 F.3d 582, 589 (6th Cir. 2008) (noting officers can rely on their training and experience that drug dealers frequently carry weapons).] Further, Valdez explained that he believed Sleet may be involved in gang activity based on his association with gang members and that he could not rule out Sleet as the owner of the firearms recovered at the residence. [Rec. at 1:06:00-1:06:58] Valdez also testified that younger gang members are more likely to carry firearms. [Rec. at 1:09:00-1:11:56] Moreover, Chenault caused a commotion at the scene, which the officer identified as a tactic to allow others involved in criminal activity to conceal or dispose contraband. [Rec. at 1:25:28-1:25:45] Sleet also placed his hands in his pockets as he exited the vehicle. [Rec. at 1:18:56] Lastly, Valdez stated that he had previously encountered Lovette who did not possess a firearm, but another individual with him did.

The above facts constitute reasonable suspicion by the officer that Sleet may have been armed and dangerous.

    iii.    <u>Valdez did not exceed the scope of a Terry pat down.</u>

"If a police officer pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons."

*Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Valdez conducted a pat down for weapons and felt narcotics during the search. Valdez testified that it was immediately apparent to him that the item in Sleet's pocket was narcotics. And when he asked Sleet about the item, Sleet cound not identify the item. While Valdez finished the search before coming back to the narcotics, this procedure did not exceed the scope of the Terry pat down. Valdez testified that. because the narcotics were not an immediate threat to him, he finished the frisk and then came back to the item. [Rec. at 1:34:00-1:34:55] The search did not go beyond what was necessary to determine if Sleet was armed and Valdez was not required to ignore the contraband that he immediately recognized as narcotics. *See id*. at 373.

Valdez did not exceed the scope of the Terry pat down.

    iv.    <u>The removal of contraband from Sleet's person was valid under the plain feel doctrine.</u>

If officers feel an item which they reasonably believe to be contraband during the course of a valid Terry pat down, they do not need to ignore it. *See Dickerson*, 508 U.S. at 373-77 (analogizing the plain view doctrine to a plain feel during a pat down). To seize contraband felt during a Terry pat down, "(1) the police must be in a lawful position from which they view (or feel) the object; (2) the object's incriminating nature must be immediately apparent; and (3) the officers must have a lawful right of access to the object." *Pacheco*, 841 F.3d at 394. The court considers three factors to determine whether an object's incriminatory nature is immediately apparent:

> (1) a nexus between the seized object and the [suspected criminal activity]; (2) whether the intrinsic nature or appearance of the seized object gives probable cause to believe that it is associated with criminal activity; and (3) whether the executing officers can at the time of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature.

*Id.*

The traffic stop and subsequent pat down of Sleet were appropriate. Therefore, Valdez was in a lawful position to feel the contraband during the pat down and had the right to access it. Additionally, Valdez testified that he felt an item he immediately recognized as narcotics. [Rec. at 1:28:00-1:35:00] He explained that he felt the baggie the first time he went over Sleet's front left pocket and it had a distinctive feel. He noted that the baggie had the feeling of a stress ball but smaller, like powder inside of a bag. Further, he stated that his first thought was that the item was narcotics.

The item was lawfully seized following a valid Terry frisk.[3]

**III.**

Based on the foregoing reasons and analysis, it is hereby

**ORDERED** that the Report and Recommendation of United States Magistrate Judge Stinnett [Record No. 34] is **ADOPTED** in full and **INCORPORATED** here by reference. Defendant Jameel Sleet's motion to suppress [Record No. 24] is **DENIED**.

Dated: April 15, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge

---

[3] Sleet argues in his motion that he did not consent to the removal of the narcotics. However, Magistrate Judge Stinnett correctly concluded, consent is immaterial because the narcotics could have been lawfully seized under the plain feel doctrine.